**In re Robert G. WISE and Mary L. Wise, Debtors.**

**No. 02–20931REF.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 3, 2007.

Eric Lester Leinbach, Eric Lester Leinbach, Esq., Easton, PA, for Debtors.

Lisa Marie Ciotti, Frederick L. Reigle, Esq., Reading, PA, for Trustee.

*MEMORANDUM OPINION SUPPORTING AND SUPPLEMENTING MARCH 8, 2007 ORDER, WHICH (1) GRANTED, BUT REDUCED, COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND (2) SANCTIONED COUNSEL BY FURTHER REDUCING THE FEES AWARDED*

RICHARD E. FEHLING, Bankruptcy Judge.

## I. BACKGROUND

On March 8, 2007, I issued and entered my written Order, dated March 8, 2007, granting, but reducing, a request for attorneys' fees for Debtors' counsel, Eric L. Leinbach, Esquire ("Mr. Leinbach"). I erred in the date that I put into the Order (dating the Order February 8 rather than March 8) and I corrected that mistake by issuing, on March 14, 2007, an Order Revising and Amending the Order (as so amended, the orders are together referred to as the "March 8, 2007 Order").[1] The March 8, 2007 Order reduced the compensation requested by Debtors' counsel because he sought payment for three hours of time for a hearing that he did not attend. I reduced the compensation sought by the amount of the requested fee for the hearing. I also reduced counsel's requested compensation by a like amount as a sanction because this overcharge was not the first of this nature that I have seen from Mr. Leinbach. Mr. Leinbach filed an appeal from the March 8 2007 Order on Monday, March 19, 2007, and I am filing this Opinion supporting and supplementing my March 8, 2007 Order pursuant to Eastern District of Pennsylvania Bankruptcy

---

1. The March 14, 2007, states:

AND NOW, this 14th day of March, 2007, my Order in this matter approving, in part, the application of Eric L. Leinbach, Esquire, Debtors' counsel, ("Mr. Leinbach") for certain attorneys' fees in the above Chapter 13 case by filing his Third Application for Compensation and Reimbursement of Expenses on or about December 27, 2006 (the "Application"), and upon my entry of an Order dated February 8, 2007, rather than the correct date of March 8, 2007.

IT IS HEREBY ORDERED that my Order dated February 8, 2007, is hereby revised and amended to reflect the actual date that the Order was signed, entered, and filed, which was March 8, 2007.

Court Local Bankruptcy Rule 8001–1(b).[2] The discussion below represents my findings of fact and my conclusions of law.

## II. PROCEDURAL BACKGROUND

Debtors, through their counsel Mr. Leinbach, filed this Chapter 13 bankruptcy case on March 1, 2002. Two weeks after the initial filing, Mr. Leinbach filed his Rule 2016 Disclosure of Compensation by Attorney, disclosing that he had charged Debtors $6,000 as his fee in this case and that he had received a retainer/deposit of $1,000. That is a very high initial fee for a Chapter 13 bankruptcy, particularly in 2002, but Debtors were experienced in bankruptcy and bankruptcy litigation, having filed and failed to complete two previous bankruptcy cases.[3] In the first year and a half of this bankruptcy, Debtors initiated or responded to numerous contested matters and adversary proceedings and either litigated or resolved them through settlement. Through much of

that time, the Chapter 13 Trustee filed, and continually pressed, a motion for dismissal because of problems with Debtors' proposed Chapter 13 Plan. In May 2003, Mr. Leinbach revised his Disclosure of Compensation, increasing it to $10,000.[4] Debtors' First Amended Chapter 13 Plan was finally confirmed on June 5, 2003.

On February 6, 2004, Mr. Leinbach filed a so-called Second Application for Compensation, requesting approval of $8,955 of fees and no expenses. The Second Application referred to a prior application, which was supposedly for the period February 27, 2002, through May 22, 2002, for a fee of $1,500, which was purportedly granted by an order dated June 5, 2003. The docket for this case reflects no such prior application and no order approving any prior application. Nevertheless, the Court considered the so-called Second Application and approved it in the full amount requested of $8,955 on March 9, 2004. In fact, Mr. Leinbach's "first" application was

---

**2.** Local Rule 8001–1(b) provides: "(b) *Opinion in Support of Order.* The bankruptcy judge whose order is the subject of an appeal may, within 15 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion." L.B.R. 8001–1(b) (2005).

The SOURCE note for Rule 8001–1 explains: "This rule is derived from L.A.R. 3.1 of the Third Circuit's Local Rules. Under subdivision (b) of this rule, a bankruptcy judge has the same opportunity as a district judge to file an opinion after an appeal has been taken."

**3.** Debtors filed their first (as noted in the CM/ECF system) Chapter 13 case on January 30, 2001 (No. 01–20417), which case was dismissed a bit over two months later, on April 6, 2001. Debtors filed their second Chapter 13 case less than a month after the first case was dismissed, on May 2, 2001 (No. 01–22154). Debtors' second case was dismissed less than ten months later, on February 14, 2002. Debtors' third Chapter 13 case,

the case at bar herein, was filed on March 1, 2002, only two weeks after the second case was dismissed. In their second bankruptcy case, Debtors had initiated a number of adversary proceedings and contested motions in their bankruptcy. Mr. Leinbach was Debtors' counsel in both of the prior cases, including their adversary proceedings and contested motions, so he knew (I assume) that Debtors' third case, the case at bar, was likely to incur substantial time and therefore attorneys' fees, hence the extremely large anticipated fee in his disclosure certification.

**4.** Many attorneys, including Mr. Leinbach, do not feel obliged to live within their initially disclosed and agreed upon compensation. Although the Disclosure form includes the ability to note that certain additional fees might be required under certain circumstances, many lawyers do not use that provision. Their practice is to simply increase the required fee and file an amended Disclosure, as Mr. Leinbach did in this case.

not filed until October 17, 2005, and was filed for a flat "no look" fee [5] of $2,000, not $1,500. The "first" fee application, which was actually filed second, was approved on December 2, 2005. As of December 2002, therefore, Mr. Leinbach had fees approved of $10,955, an amount in excess of the May 2003 amended Disclosure of Compensation by $955.

Debtors filed a Motion To Partially Sell Real Property on December 20, 2005.[6] A hearing was scheduled on the Motion To Partially Sell for January 12, 2006, which hearing will be discussed in greater length below. Debtors developed post-confirmation problems through 2006, causing them to amend their plan, seek abatement of plan payments, and face the Chapter 13 Trustee's motion to dismiss their case, all of which seem to have been resolved by January 2007.

On December 27, 2006, Mr. Leinbach filed his Third Application for Compensation, through which he requested approval of an additional $2,202.50 for fees and $77.40 for expenses on top of the nearly $11,000 he has already received. My review of Mr. Leinbach's Third Application for fees culminated in a hearing on the fee application, my March 8, 2007 Order, and the appeal that is now pending.

## III. REVIEWS OF FEE APPLICATIONS GENERALLY AND OF MR. LEINBACH'S, IN PARTICULAR

### A. Review of Fee Applications Generally

I was appointed to sit in the Reading Division of the Eastern District of Pennsylvania in February 2006. Although I had been involved to some extent with consumer debtors' counsel fees, I did not have substantial experience. Over my first six months or so, I reviewed dozens, certainly more than a hundred, consumer debtors' fee applications for counsel. In the course of that review I became familiar with the "going rate" charged by consumer debtors' attorneys and the amount and range of fees that might be charged in Chapter 13 attorney compensation cases.[7] As part of my ongoing responsibility to review fees, even if uncontested,[8] I would review counsels' lists of their time entries for various tasks they had performed for their debtor-clients. I saw that a large proportion of the fee applications were under the "no look" threshold of $2,000.[9] A very large percentage of fee applications were under $3,500. But some of the fee requests exceeded $3,500. Within the first few months of sitting as a Bankruptcy Judge, I set hearings on otherwise uncontested fee applications in excess of $3,500 for most of the attorneys who regularly practice bankruptcy before me. Initially, I

---

**5.** Local Bankruptcy Rule 2016–2(a) permits counsel to dispense with specific, individual time entries and to file for a lump-sum fee if the total compensation for counsel in the case will be $2,000 or less. This is referred to colloquially as a "no look" fee.

**6.** Debtors meant, by "partially selling" their property, that they would sell a one-third interest in the property to some third party to raise funds that they apparently needed.

**7.** Since 2004, when the United States Supreme Court dispensed with the award of attorneys' fees from Chapter 7 debtors' estates

to their counsel in *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), this Court does not review or approve Chapter 7 attorneys' fee applications for payment by the estate.

**8.** *See In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 840–45 (3d Cir.1994). *See also* the discussion of *Busy Beaver* below, for the duty of Bankruptcy Courts to review attorneys' compensation applications sua sponte, even if no other party to a proceeding objects or contests the application.

**9.** *See* footnote 5, above.

set the hearings sua sponte for fee applications that appeared unusual or that were in excess of $3,500,[10] and I asked counsel to explain what they had done for the fees in those applications. When Mr. Leinbach testified about his fee applications for which I had set a hearing, I was surprised to learn that he had no contemporaneous time-keeping system, either manual with a time-sheet and a pencil or computer software. I will more fully discuss Mr. Leinbach's "after-the-fact" creation of time records later in this Opinion.

In the course of my examination of numerous fee applications, I noticed that some fees stood out as aberrations, being higher on average than others for similarly straight-forward or complex cases. When I refer to noticing aberrations on average, I do not mean to imply any precise, methodical, or organized review or calculation. I mean simply that as I reviewed many fee applications, a framework of sorts developed in my mind and I saw that some counsels' fees were consistently higher than most others (I also saw that some requests for fees were consistently lower). I also noticed several large time entries of several hours for specific tasks performed, particularly for attending hearings and for attending Section 341 meetings of creditors.[11] I also noticed that Mr. Leinbach was and is the only attorney seeking approval of fees that were charged in 1/8–hour increments of time. Most other law firm charge time in 1/10–hour increments. I have not heretofore regarded this as an issue because some attorneys who bill in 1/10–hour increments rarely include an

event whose time is 0.10 hours. I have not yet determined that billing in minimal increments of 1/8–hour is per se unreasonable.

## B. Review of Mr. Leinbach's Fee Applications

In my first half-year review, a disproportionate number of the fee applications that appeared to be higher than the norm, taking into account the complexity and number of tasks performed, were Mr. Leinbach's. Also, many of the fee applications in which abnormally high numbers of hours were charged for hearings or creditors' meetings were Mr. Leinbach's. I do not state these general references as substantive support for any of the discussion below about what Mr. Leinbach did or did not do in his fee application in this matter. I provide this reference solely to establish how and why I started to scrutinize Mr. Leinbach's fee applications more particularly in Fall 2006.

I also note at this point that Mr. Leinbach is a very effective and tenacious advocate for his clients' interests in Bankruptcy Court. He is a bright and aggressive attorney who knows many procedural and substantive methods to establish, protect, and enhance his clients' rights and remedies. Despite his tenacity and ability, I have had no attorney who has been the subject of as many complaints by his existing and former clients relating to his refusal to represent them, generally when they could not pay him some additional retainer or agree to some increase in his fee. Un-

---

**10.** I tried to avoid loss of productive time for counsel by scheduling these hearings on dates on which counsel would be in court for some other matter. I continue to do this. For example, on March 28, 2007, I approved Mr. Leinbach's request for a continuance of a hearing for my consideration of another of his fee applications because he had nothing else

on my calendar the day it would have been heard.

**11.** Section 341 of the Bankruptcy Code requires that the Trustee, in each case, schedule and conduct a meeting of creditors within a reasonable time after the bankruptcy case is initiated. 11 U.S.C. § 341(a).

fortunately, difficulties between clients and counsel occur, but Mr. Leinbach is the only attorney practicing before me who has had more than one such complaint voiced against him. A number of his clients have complained.[12] These complaints from Mr. Leinbach's clients are not presented to support the March 8, 2007 Order; rather, they are offered in support of my belief that Mr. Leinbach's approach to his fees and compensation, which I had seen in the Summer and Fall of 2006, warranted my closer attention and scrutiny.

### C. Initial Review and Reduction Overcharges in Mr. Leinbach's Fee Applications

When I started to review Mr. Leinbach's fee applications more closely in the Fall of 2006, I noted what appeared to be instances in which Mr. Leinbach was charging the full amount of time for traveling to and attending a hearing or creditors' meeting, when he (or some other attorney in his firm) had actually represented two or three or more other clients at hearings or meetings on the same date in the same courtroom or meeting room. Despite his representation of multiple clients at the hearings and meetings, Mr. Leinbach did not pro-rate the time among the clients in his fee applications.[13] In other words, it appeared that Mr. Leinbach was double billing and triple billing and more for attending hearings and creditors' meetings for multiple clients. This is not the type of over-billing that occurred in this case, which is even more egregious, but it led to my closer review of Mr. Leinbach's fee applications. I will specifically analyze Mr. Leinbach's overcharging in this case in more detail below.

Not wishing to embarrass Mr. Leinbach by addressing this discovery in public, in November 2006, I had an off-the-record sidebar conference with him and counsel for the Chapter 13 Trustee, during a hearing on other cases, in which I told him that I had seen this overcharging in some of his bills and I would deduct some of his requested fees from the orders generally approving his fees. Mr. Leinbach was apologetic and promised to examine other fee applications more carefully to ensure that this would not happen again.[14]

### D. Specific Reductions of Mr. Leinbach's Fee Applications

On November 16, 2006, I held hearings in two cases to review Mr. Leinbach's fee

---

12. *See, e.g., In re Papp*, No. 06–20973 (Mr. Leinbach's entire initial retainer was ordered disgorged by my Order of October 26, 2006, granting the motion for disgorgement pressed by the United States Trustee).

If Mr. Leinbach develops difficulties with his clients, or if fee disputes arise that cause him, in his professional judgment, to withdraw as counsel, he may do so and he has done so. *See In re Muzzicato*, No. 03–24512 (Mr. Leinbach was ordered to continue his representation of his client until his request to withdraw was granted, which request was ultimately granted). But as long as he represents his clients and does not withdraw as counsel, his professional duty is to represent them and their interests in court proceedings that arise. Unfortunately, I have had more than one client of Mr. Leinbach appear in

Court without him, telling me that Mr. Leinbach wanted an additional fee, but the client could not afford it.

13. To investigate his over-charging, I would (a) note that Mr. Leinbach (or another attorney in his office) had charged a certain amount of time for a hearing or meeting, (b) look at records of all hearings or meetings that day, (c) review other relevant court records, and (d) note the number of his clients that Mr. Leinbach (or another attorney) had represented that day.

14. Following this side-bar, I reduced the fees in *In re Kaminski*, No. 01–25537 (order dated November 14, 2006) and *In re Ross*, No. 03–23788 (order dated November 27, 2006), among other cases.

applications.[15] Because it appeared to me generally that the fees charged were excessive for the work undertaken and the results achieved, I reduced both of the fee requests.[16] As with my previous, generalized review of fee applications that I undertook in my first six months on the bench, I do not relate these fee applications and hearings to establish that Mr. Leinbach has overcharged in the case at bar. I refer to it for two reasons: First, to show my first steps in dealing progressively with Mr. Leinbach's overcharging; and second, to support the imposition of sanctions against Mr. Leinbach, that I discuss in more detail below.

### E. Review and Reduction of Mr. Leinbach's Fee Applications in 2007

In early 2007, I noticed two other cases that were similar and in which Mr. Leinbach was counsel for debtors. Both cases had been dismissed, but Mr. Leinbach pursued his fee requests. The cases were similar in the negative results obtained for his clients, but one case took six months with very few adversarial events occurring through that time, *In re Faust*, No. 06–20794, and the other took over a year to administer, including many disputes with creditors and other parties in interest along the way, *In re Wasilewski*, No. 05–29021. The shorter, less conflict-laden *Faust* case had roughly the same time charged and had a slightly higher request for compensation. Having noticed this oddity, I examined both cases and held a hearing on February 1, 2007, for a review of Mr. Leinbach's fee applications in both

cases. Through the course of the hearing, I learned that Mr. Leinbach (or an attorney in his office) had failed to pro-rate the time attributed to creditors' meetings among all of his clients for whom he had performed the work. In the *Faust* case, Mr. Leinbach's office charged to the Fausts all of the time (5.0 hours) for attending a number of creditors' meetings in which an attorney from his office represented several of their clients that day. The time and fee were not prorated among all of his clients represented at that meeting. I approved his requested fee in *Faust*, but I reduced it from $3,875 to $3,200.[17] The same sort of overcharge occurred in the *Wasilewski* case. Again, I approved his requested fee, but I reduced it from $3,520 to $3,020.[18] In both Faust and Wasilewsi, I did not reduce the fee by the full amount of the overcharged event. Instead, I reduced the fee only to what it should have been if the time for the event had been properly prorated.

Mr. Leinbach also testified in the hearings on February 1, 2007, that he had acquired and had started to use a computerized time-keeping system in the Fall of 2006, but that, in the *Faust* and *Wasilewski* cases, the time records had been compiled by going back through the files to try to resurrect some idea of what was done on behalf of the client and how long it took. Non-contemporaneous, after the fact re-creation of time entries is clearly a deficient and inappropriate method of time-keeping. Hopefully, the more appropriate contemporaneous time keeping sys-

---

15. *In re Sherer*, No. 03–21188; *In re Williams*, No. 04–20617.

16. *Williams* (order dated December 18, 2006); *Sherer* (order dated January 10, 2007).

17. *In re Faust*, No. 06–20794 (order dated February 1, 2007) (although I had a sense that the overall fee was far too high for the

work performed, I could not point specifically at anything and I therefore did not reduce his fee below $3,200).

18. *In re Wasilewski*, No. 05–29021 (order dated February 1, 2007) (unlike in *Faust*, Mr. Leinbach's fees were supported by the work undertaken in this case after the reduction).

tem that Mr. Leinbach now says he has will eliminate the present problems with his fee applications.

In the February 1, 2007 hearing, Mr. Leinbach and a paralegal from his office testified that his staff would go through a file when he decided to bill it (generally long after the work was actually undertaken), would look for any notations of time on any documents that were in the file, and would transpose the time entry into some word processing document that he did not produce in evidence for me. Apparently, his staff would also look for hearings and meetings within a case's electronic, on-line docket and guesstimate the amount of time spent in attending any such hearing or meeting. Mr. Leinbach's staff appears to charge an identical, fixed amount of time for particular tasks regardless how much (or little) time was actually incurred to accomplish the task. But that was the only way his office could create time records when none existed.[19]

## IV. MR. LEINBACH'S THIRD FEE APPLICATION IN THIS CASE

At the time that Mr. Leinbach's Third Fee Application in this case came to my attention, I had noted all of the preceding overcharges (and more) by Mr. Leinbach in the cases cited above and in his other fee applications. When I first received the Third Fee Application, I immediately noted that Mr. Leinbach had already had fees approved in this case of nearly $11,000, which is a very large fee for any Chapter 13 case. I then reviewed (1) the rates to see if they were consistent, appropriate, and reasonable[20] and (2) the time entries to see if they were legitimately charged. I first looked at the issues relating to the rates used for Debtors in this case. Mr. Leinbach had used his 2006 rate of $240/hour for his 2006 time and, although he

**19.** My description of the efforts undertaken long after the fact by Mr. Leinbach's staff to create some record of time spent in a matter when no such record exists is similar to all of my other conclusions and analyses of information I have received about his efforts to create time entries in his fee applications. That is, I did not and do not now use, in this matter, my assumptions about his system and directions to his staff in other cases, other than to note that, in case after case, his after-the-fact time-entry system simply did not and does not work. None of these assumptions, however, was used to determine whether the charges in the Third Fee Application in this case were legitimate or otherwise; the assumptions and my experiences with his past applications did, however, lead me to question Mr. Leinbach's fee application in the Third Fee Application. My experiences with Mr. Leinbach's fee applications in these other cases does, however, support my imposition of sanctions against him, as discussed in more detail below.

**20.** Sometime in 2006, Mr. Leinbach started to apply new rates to old time entries. His standard, ordinary rate charged for 2004 and 2005 time was $180/hour. His standard, ordinary rate charged for 2006 time was $240/ hour. This is a 33% increase that Mr. Leinbach has justified by saying he had charged the $180 rate for quite some time. His standard, ordinary rate charged for 2007 time, however, is now $280/hour. This is a 17% rate increase in one year's time. I do not presently take issue with Mr. Leinbach's new rate. Mr. Leinbach is an experienced, senior attorney, for whom the rate of $280/hour might be appropriate (this issue has not yet come before me). Most consumer debtors' attorneys who practice before me charge less, but some (not many) other consumer debtors' attorneys charge at that rate or slightly higher. Mr. Leinbach has tried in other cases, however, to charge his increased 2006 rates for time incurred in prior years, which I have not knowingly permitted. See, e.g., In re Gray, Case No. 03–25573 (order dated March 27, 2007, reducing Mr. Leinbach's fee because he used his 2006 rate of $240/hour for time incurred in 2004, when his rate was $180/hour—although my Order in the Gray matter was not written until after the March 8, 2007 Order, it serves as an example of Mr. Leinbach's application of new rates to old time).

used his 2006 rate of $240/hour for his 2005 time, he had charged only 0.75 hours of time in 2005, so I overlooked this negligible $45 overcharge.

In the matter of overcharging time, however, I discovered a serious problem. Mr. Leinbach had charged 3.0 hours of time on January 12, 2006, for a hearing at which he did not appear. His 3.0 hour time entry for a hearing on that day was a total overcharge. Scheduled on my calendar that Thursday were many Chapter 13 Trustee motions on my 9:00 list, a number of general motions on my 9:30 list, and a number of United States Trustee motions on my 11:00 list. I reviewed the Court's records to determine: (1.) Was a hearing scheduled and held on January 12, 2007; (2.) assuming that a hearing was, in fact, held in this case on that day, was Mr. Leinbach (or another lawyer from his firm) present at the hearing; and (3.) whether any of the other matters listed that day were for any of Mr. Leinbach's other clients. I find (as is discussed below) that the hearing was held on January 12, 2006, but no attorney from Mr. Leinbach's office was present. In addition to reviewing the printed case list that day, I examined the Entries of Appearance of all counsel who appeared in Court that day and I listened to the official Court CD recording of the day's proceedings.

In the course of the proceedings, the colloquy between counsel for the Chapter 13 Trustee and my predecessor, Judge Thomas M. Twardowski, in the *Wise* Mo-

tion for Partial Sale proved to me without question that Mr. Leinbach had not appeared at any hearing for Debtors (or any other matters) on that day. In footnote 1 of my March 8, 2007 Order, I explained in detail why I am quite certain that Mr. Leinbach did not attend any hearing that morning and overcharged the estate by 3.0 hours. I included a transcription of the CD recording for that day's hearings. Footnote 1 of my March 8, 2007 Order states:

> In Mr. Leinbach's Application, he includes a time entry on January 12, 2006, that reads: "Preparation for Hearing, Pro-rated Travel to and from Hearing, Appearance at Hearing, Conversation with Clients."[21] In fact, although I had a list of numerous cases that day, Mr. Leinbach did not appear at any of them—neither Mr. Leinbach nor Debtors appeared in or for any hearing before me that day. The *Wise* case was on that hearing list, but Mr. Leinbach did not appear in it. In Mr. Leinbach's March 6, 2007 supplementary letter, he reiterated his recollection that he had spoken with counsel for the Chapter 13 Trustee at the hearing on January 12, 2006.

> Following is the colloquy, from the official Court electronic recording that day between Lisa Ciotti, Esquire, counsel for the Chapter 13 Trustee, and the Court:

> THE COURT: 279 Wise

---

21. [This footnote was NOT in the original March 8, 2007 Order.] Mr. Leinbach uses block billing to describe attendance at hearings or meetings. He will typically lump together any number of the following tasks or others in various fee applications: Review file; prepare for hearing/meeting; travel to hearing/meeting; conference with client; conference with opposing attorney; and others. This strategy allows him to manipulate the exact times of attendance at and travel to the hearing/meeting. Although it is not relevant for this particular matter, I have seen him use it in other cases and it is an issue that will arise in the future. For decisions reviewing and condemning block timekeeping, see *In re Burgoyne, Inc.*, No. 01–35687, 2002 WL 31685730 at *3 fn. 9 (Bankr.E.D.Pa., Nov. 4, 2002); *Messner v. Commerce Bank (In re Smith)*, 331 B.R. 622, 633 (Bankr.M.D.Pa. 2005).

MS. CIOTTI: Good morning, Your Honor, Lisa Ciotti on behalf of the Trustee. Your Honor, this is Mr. Leinbach's motion to sell. We filed an objection to the motion to sell and I believe attorney Little has also filed an objection. I spoke with attorney Leinbach yesterday, he advised that he was going to withdraw his motion. Ms. Spinka advised me that the motion has not been withdrawn on the docket as of yet. He's not here to press the motion, so I'd ask that it be dismissed.

THE COURT: Alright. I'll enter a bench order dismissing it, with the understanding that that's really the bottom line that counsel for debtor wishes anyway, but it's now dismissed. If Eric disagrees with that, he can refile the motion I suppose, or something similar. Alright?

MS. CIOTTI: Thank you, Your Honor.

THE COURT: If you could, well, he'll see on the docket what happened.

MS. CIOTTI: Thank you, Your Honor.

THE COURT: By the way, is Mr. Leinbach present or are his clients, either of them, Robert or Mary Wise? No response. Okay.

MS. CIOTTI: Thank-you, Your Honor.

Furthermore, the official Court records for January 12, 2006, contain no Entry of Appearance for Mr. Leinbach in this case or any other that day.

After my review of the Third Fee Application, I set it for a hearing on March 1, 2007. At the March 1, 2007 hearing, I informed Mr. Leinbach that the issue I had with the *Wise* Third Fee Application was the charge of 3.0 hours for a hearing [22] that he did not attend. I told him that no Entry of Appearance had his name on it and that the official recording of the matters heard that day had convinced me that he was not present. Mr. Leinbach said he had no information with him that would show he had attended such a hearing.[23] But he was sure, he testified, that he remembered (nearly 14 months later) that he had done so. He expressed his concern that he had not known what was specifically at issue in the hearing and thought he could provide me with something from his records back at his office that showed he had been at the hearing. Although Mr. Leinbach should have brought to the hearing anything from his files that supported his Third Fee Application, I kept the record open and granted him leave to supplement the record with anything he might have that established that he had been in Court on January 12, 2006, to attend the hearing or to otherwise resolve the matter.

On March 7, 2007, I received Mr. Leinbach's letter dated March 6, 2007,[24] supple-

---

**22.** The January 12, 2006 hearing had been scheduled for Judge Twardowski to consider Debtors' Motion To Partially Sell Real Property, which was discussed above.

**23.** It would be entirely possible for Mr. Leinbach to say legitimately that he had attended a hearing even if no hearing actually took place. Many times, counsel come to Court for a hearing that is settled or otherwise resolved. In such a situation, noting time as having been incurred at a hearing might not

be entirely accurate, but it would not constitute a misstatement. In this case, however, it is quite clear to me from the Court's records that the matter at issue for the *Wise* January 12, 2006 hearing had been resolved the day before and neither Mr. Leinbach nor any other attorney from his office had appeared at the January 12, 2006 hearing.

**24.** Document 152 on the Docket, dated March 7, 2007, in this case.

menting the record of the March 1, 2007 hearing. In it he remarks:

> After investigation, I find no additional document other than the computerized entry on the docket to support my appearance for that day. I reiterate what I informed you in court, that I have a specific recollection of discussing that matter with Ms. Ciotti in the Courtroom. I can't recall the specificity of [sic] if it was January 12, 2006 on the 9:00 list or the 9:30 list.

The "computerized entry on the docket" to which Mr. Leinbach refers in his March 6, 2007 letter reads as follows:

> Hearing Held on Motion to Partially Sell Real Property, Filed by Mary Lynne Wise, Robert George Wise Represented by ERIC LESTER LEINBACH. BENCH ORDER Entered Dismissing Motion.

See In re Wise, No. 02–20931, Docket Entry No. 110. The notations that (1) a hearing had been held and (2) the motion had been dismissed exist on the docket because Mr. Leinbach had failed to follow through with his statement to attorney Ciotti that he would withdraw Debtors' Motion To Partially Sell. As a result, the motion was called for hearing, counsel for the Chapter 13 Trustee relayed Mr. Leinbach's stated intentions to her from the preceding day, Judge Twardowski called the courtroom for either Debtors or Mr. Leinbach (none of whom was present), and Judge Twardowski expressly dismissed the motion on that record. The docket entry does nothing to support Mr. Leinbach's claim that he was there that day, but, to the contrary, expressly contradicts his recollection.

Mr. Leinbach conceded in his March 6, 2007 letter that he might not have submitted an Entry of Appearance, but the absence of an Entry of Appearance is a minor factor supporting my finding that he was not in Court that day. The colloquy noted above is entirely sufficient, standing alone, to establish for me that Mr. Leinbach was not in Court on January 12, 2006, which I so find.

Both in Court at the March 1, 2007 hearing and in the March 6, 2007 letter, Mr. Leinbach blames his staff for the mistake, but concedes that his review of his fee application did not catch the error. Mr. Leinbach, on the one hand, tries to pass this off as an error on his staff's part, while, on the other hand, he continues to defend his claim that he attended the January 12, 2006 hearing. This was not a mistake that he could have avoided by better supervision of his staff or by closer examination of the application. Mr. Leinbach intentionally submitted, and continues to defend, an erroneous claim of time for the hearing because he claims he had a specific recollection of being there. When confronted with the issue, his explanation that it was his staff's fault flies in the face of his continuing insistence that he was actually there. The Court records clearly show that he was not. Mr. Leinbach's lack of a contemporaneous time-keeping system before Fall 2006 is a fundamental problem that will make very difficult his accurate preparation of any fee application for matters arising before his new system became operative.

▮ Quite simply, therefore, Mr. Leinbach failed to meet his burden to prove to me that the 3.0 hours for the January 12, 2006, were actually incurred and earned. Mr. Leinbach carries the burden of establishing that the requested fees were actually earned. See Younger v. Pennsylvania Resources Corp. (In re Younger), 360 B.R. 89, 97 (Bankr.W.D.Pa.2006), citing Zolfo Cooper & Co. v. Sunbeam–Oster Co., Inc., 50 F.3d 253, 261 (3d Cir.1995).

I refer now to remarkably similar circumstances in a fee application faced by the Bankruptcy Court for the Northern District of Indiana. *In re Walker*, No. 89–11748, 1991 WL 186585 (Bankr.N.D.Ind., May 21, 1991). In *Walker*, the court substantially reduced a fee requested by counsel who had charged time for hearings that he had not attended and had over-charged for hearings he did attend. *Walker*, 1991 WL 186585, at *6–*9. The *Walker* court's examination of that very similar issue is informative and instructive for me,[25] and much of the nature of my review and investigations of court records follows that of the *Walker* court.

## V. The Court's Power and Duty To Review Sua Sponte Counsels' Fee Applications

The 1994 decision of the Third Circuit Court of Appeals in *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir.1994), described my powers and responsibilities as a Bankruptcy Judge in reviewing counsels' fee applications. Every Bankruptcy Court in the Third Circuit has relied upon the Third Circuit Court's description of these powers and requirements for reviewing fee applications. I will not reiterate the background or the approach to secretarial/paralegal time of

*Busy Beaver* because they are not at issue in before me. *Busy Beaver* is important here for two reasons. First, it establishes, not only my power, but my duty to review sua sponte, counsels' fee applications. Second, it sets forth certain precepts that courts should follow to protect counsels' due process rights in the review of fee applications when no other party has objected. Again, both of these issues have been addressed substantially by numerous courts, so I will only summarize *Busy Beaver's* guidance for me.

## A. Power and Duty of Bankruptcy Court To Review Fee Applications Sua Sponte

■ Sections 105[26] and 330[27] of the United States Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016[28] provide broad support for both my power and my duty to review counsels' fee applications sua sponte without regard to whether an objection has been advanced by some other party. *Busy Beaver*, 19 F.3d at 841–45. Going beyond saying that Bankruptcy Courts have the power to review fee applications sua sponte, the Third Circuit found "a *duty* to review fee applications, notwithstanding the absence of ob-

---

25. The *Walker* court's procedural approach to protecting counsel's due process rights may run contra to the *Busy Beaver* decision, but it is otherwise instructive.

26. Section 105(a) of the Bankruptcy Code is clear and compelling authority for my power to review, sua sponte, a fee or expense application. *Busy Beaver*, 19 F.3d at 841. Section 105(a) provides in part:

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

27. Section 330 states that "the court may, on its own motion or on the motion of [others] award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2).

28. Rule 2017(b) expressly spells out my power to review fee applications of a debtor's counsel on my own initiative. *Busy Beaver*, 19 F.3d at 841. Rule 2017(b) provides:

> On motion of [others] or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive . . . .

Fed. R. Bankr.P.2017(b).

jections" by other parties. *Busy Beaver,* 19 F.3d at 841 (emphasis in original).

## B. Due Process Protections In a Court's Review of a Fee Application

The Third Circuit did not leave the review of fee applications in a procedural vacuum, but examined in detail the protections, including a right to a hearing, that must be accorded to counsel whose fee application has been rejected or reduced. *Busy Beaver,* 19 F.3d at 845–48. *Busy Beaver* reviews two differing approaches to ensuring that counsel have their due process rights protected. First, a court may note (presumably through some order) its specific concerns and allow counsel to supplement the fee application in response thereto *before* making a decision or holding a hearing. *Busy Beaver,* 19 F.3d at 846. Second, a court may rely on the standards for reconsideration of an order, which would permit counsel to address the court's stated concerns *after* an order reducing the fees is entered. *Busy Beaver,* 19 F.3d at 846, quoting *In re Pettibone Corp.,* 74 B.R. 293, 300–01 (Bankr.N.D.Ill. 1987).

The Third Circuit notes the mandate on courts to allow the fee applicant the opportunity, if a request is made to the court, to present evidence or argument that the fee application is sufficient. The Court goes on to explain that, to make the hearing meaningful, the court should first apprise the fee applicant of the particular questions and objections it harbors. *Busy Beaver,* 19 F.3d at 846. The Court's statements on providing due process are all made in the context of dealing with a good faith fee applicant, one who reasonably attempts to comply with the statutory dictates and the federal and local rules. Although I find that Mr. Leinbach's charging for a hearing that he did not attend and pressing a fee application with the same type of error contained in many previously rejected fee applications constitutes bad faith, I believe that he was and is entitled to the due process protections as explained by the Third Circuit Court in *Busy Beaver.*

## C. Eastern District of Pennsylvania Protection of Due Process in Fee Applications

The Third Circuit Court approves, on the one hand, a court that provides notice of specific issues with the fee application first and then has a hearing. Alternatively, if prior notice is not given, the Third Circuit requires a court that denies all or some amount of the fee without a hearing to notify the applicant of its particular reasons for denying the fees. Furthermore, if counsel desires to do so, the court shall then allow counsel the opportunity to defend the fee application with argument or evidence at a hearing. The United States Bankruptcy Court for the Eastern Pennsylvania has provided precisely this latter mechanism (in the context of a request for reconsideration) in its Local Rule 2016–1(f), which states:

> (f) *Disposition Without Hearing: Reduced Award.* If the court without holding a hearing, awards an applicant less than the requested amount of compensation and reimbursement of expenses, an applicant's motion under Rule 9023 of the F.R.B.P. to alter or amend the order may include a request for a hearing on the application or be accompanied by a brief in support of the application. Such a motion to alter or amend is governed by LBR 9014–2, Motions Determined Without a Hearing, except that the court shall hold a hearing if an applicant requests a hearing.

L.B.R. 2016–1(f) (2005). The Source for this local rule explains further:

> *Subdivision (f).* If the court rules on a fee application without holding a hear-

ing, an applicant may file a motion under F.R.B.P. 9023 to alter or amend the order. This subdivision provides that if a Rule 9023 motion contains a request for a hearing, the court must hold a hearing before ruling on the Rule 9023 motion. If the Rule 9023 motion does not contain a request for a hearing, the court may dispose of the motion under L.B.R. 9014–2 without a hearing.

Full due process protection is therefore afforded to a fee applicant whose fee is reduced despite no preliminary notice. But Mr. Leinbach was given full notice in this case even before the fee reduction was effected. First, I provided Mr. Leinbach with a hearing with specific notice that it pertained to the Third Fee Application in this case. Second, in the course of that hearing, I told Mr. Leinbach specifically that the issue with which I was concerned was his charging time for attending the January 12, 2006 hearing. Third, I kept the record open to allow Mr. Leinbach to return to his office to supplement the record with any further proof that he had attended the January 12, 2006 hearing.

Mr. Leinbach's due process rights, as described in and required by *Busy Beaver*, would have been satisfied and protected even if I had issued an order reducing his fees with no hearing. He would then have had the right under L.B.R. 2016–1(f) to request reconsideration with a hearing under Rule 9023 and I would have afforded him such a hearing.

## VI. ADDITIONAL REDUCTION IN MR. LEINBACH'S FEE AS A SANCTION

■ In addition to reducing his requested compensation by the amount of the fee attributable to the hearing that he did not

attend ($720), I reduced Mr. Leinbach's fee by a like amount as a sanction.

Beginning in the Fall of 2006, through February 1, 2007, the date of the *Faust* and *Wasilewski* hearings (which resulted in fee reductions for overcharging time), and through even more recent instances in which Mr. Leinbach's fees have been reduced for charging too much for hearings or meetings that could not have taken as much time as he said or that did not take place,[29] Mr Leinbach's fee applications continue to contain gross overcharges such as this three hour charge for the January 12, 2006 hearing that he did not attend. In footnote 3 in my March 8, 2007 Order, I set forth a limited description of the background and history of Mr. Leinbach's fee applications that I expanded upon and explained more fully above in this Opinion. The Third Fee Application was filed December 27, 2006, which was after the hearings and instances of reduced fees and overcharges in the Fall. Mr. Leinbach was certainly aware that his system of time-keeping was inherently faulty and subject to mistakes, yet he presented the Third Fee Application with a substantial entry of time for an event that he did not attend.

### A. The Court's Inherent Power To Sanction Attorneys

■ The Third Circuit Court of Appeals recognized the inherent power and authority of bankruptcy courts to sanction attorneys who act in bad faith when appearing before them in another case involving sanctions against Mr. Leinbach, *Leinbach v. Fein (In re Amoroso)*, 123 Fed Appx. 43, 47, 2004 WL 2429624 (3d Cir.2004). I may not, and I would not want to, assess sanctions pursuant to my inherent power to sanction an attorney unless that attor-

---

**29.** *See, e.g., In re Bechtold,* No. 06–20586 (order dated February 23, 2007, reducing fee for misidentifying the event for which time was charged as a hearing rather than a creditors' meeting and failing to properly prorate the time incurred in attending the creditors' meeting).

ney acted in bad faith. *Leinbach v. Fein,* 123 Fed.Appx. at 47. Mr. Leinbach, however, is responsible for allowing faulty and incorrect fee applications to be prepared by his staff and for allowing new and formerly prepared, faulty and incorrect fee applications to continue through the system. In the face of his certain knowledge that his time-keeping methodology is grossly deficient and faulty, Mr. Leinbach's persistence in advancing and pressing his erroneous fee applications constitutes bad faith.

Recently, Mr. Leinbach has withdrawn a number of fee applications.[30] Although no express reason was stated in his withdrawal of those fee applications, I would hope that he understands that he should withdraw and re-review every pending fee application that relies on his error-prone methodology for the re-creation of time entries. Merely reducing the amount of his fees by my entry of previous Orders in other cases, which Orders eliminate or reduce the offending entries, has apparently not led him to put more care into his fee applications or to review those already filed. Perhaps the sanction in this case, as small as it is, will now cause him to do so. On the other hand, perhaps further, more severe, sanctions will be necessary.

*B. Particularized Notice of Sanctions*

My sanction of Mr. Leinbach in the March 8, 2007 Order was imposed with sufficient particularized notice. As explained in *Leinbach v. Fein,* 123 Fed.Appx. at 49, I must provide particularized notice and some opportunity to respond to afford Mr. Leinbach due process.

First, as in *Leinbach v. Fein,* Mr. Leinbach was clearly alerted to the issue for which he is sanctioned, *i.e.,* problems with his time-keeping for his fee applications beginning in Fall 2006, yet he continues to claim that he is upset because his staff let another overcharge slip through.[31] Mr. Leinbach must know that my questioning and finding errors in fee application after fee application from Fall 2006 through February 2007 means that he has a duty to review all fee applications more carefully to avoid continual overcharging.

Second, Mr. Leinbach's due process rights were fully protected by L.B.R. 2016–2(f). If Mr. Leinbach had requested reconsideration of the sanction aspect of my March 8, 2007 Order, he would have been allowed a full and complete opportunity to present further evidence or argument on that issue. He chose not to do so. His due process rights were fully protected by both particularized notice and the opportunity to respond.

## VII. CONCLUSION

Mr. Leinbach has a history of imposing on the Court, his clients, and their bankrupt estates fee applications that overcharge both for work performed and for work not performed. His protests that his fee applications are as good as possible fall short of the mark because he has been utterly unsuccessful in appropriately monitoring the accuracy of his applications. Mr. Leinbach's clear failure to attend the January 12, 2006 hearing warrants reduction of his fee application for the full amount that he charged for allegedly attending that hearing.

---

**30.** *See, e.g., In re Colon,* 01–22199; *In re Asken,* 05–20092; *In re Honey,* 05–23597.

**31.** As I noted above, Mr. Leinbach's protestations about his staff fall stonily to the floor in this case, because Mr. Leinbach continues to press his claim that he was at the January 12, 2006 hearing, all other evidence notwith-

standing. But even if it is entirely the fault of his staff, Mr. Leinbach, as the sole proprietor and senior attorney of his law firm and as the attorney who advanced and signed the fee application is solely responsible for the errant filings.

The sanction imposed on Mr. Leinbach of a further reduction of his fees in an amount equal to the overcharge is justified and appropriate. Mr. Leinbach's due process rights were wholly protected by both the hearing actually convened, including my decision to hold the record open to allow him to supplement it, and by L.B.R. Rule 2016–1(f), which would have allowed Mr. Leinbach to request reconsideration of any aspect of the March 8, 2007 Order for further hearing or argument. Moreover, Mr. Leinbach clearly had particularized notice that his fee applications generally and this Third Fee Application in particular, were faulty. He did nothing to justify his conduct, despite his opportunity to do so through my holding the record of the March 1, 2007 hearing, open to supplement the evidence, or through a request for reconsideration pursuant to Local Rule 2016–1(f).

This Opinion supplements and supports the March 8, 2007 Order and no further order is necessary.